# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ANGEL RANDOLPH                                          CIVIL ACTION

VERSUS                                                  16-825-SDD-RLB

OSC-MANAGEMENT, INC.

## RULING

This matter is before the Court on the *Motion to Dismiss for Failure to State a Claim*[1] and *Motion for Summary Judgment*[2] filed by Defendant, OSC-Management, Inc. ("Defendant"). Plaintiff, Angel Randolph, ("Plaintiff") has filed an *Opposition*[3] to each of Defendant's motions, as well as filing her own *Motion for Summary Judgment*.[4] The Defendant has filed an *Opposition*[5] to Plaintiff's motion, to which Plaintiff has filed a *Reply*.[6] The Court ordered supplemental briefing on the applicability of the *Rooker-Feldman* doctrine.[7] For the following reasons, the pending motions will be denied as moot.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[8]

Plaintiff is a thirty-three year old resident of the Jefferson South apartment complex, a building owned and operated by OSC. Plaintiff has lived at Jefferson South since 2013. Plaintiff has a developmental disorder and other mental health issues and receives assistance from multiple federal and state programs including the Social Security

---

[1] Rec. Doc. 24.
[2] Rec. Doc. 23.
[3] Rec. Docs. 30 and 31.
[4] Rec. Doc. 25.
[5] Rec. Doc. 26.
[6] Rec. Doc. 37.
[7] Rec. Doc. 38.
[8] The Court bases the factual background on Rec. Docs. 1, 4-1, 17-1.

45656

Disability benefits program ("SSD"), the Rural Development Rental Assistance Program ("RDRAP"), and the New Opportunity Waiver program ("NOW").  Plaintiff's sole source of income is her SSD payment, and she is assisted by healthcare attendants on a daily basis.

Plaintiff receives rental assistance benefits through the RDRAP program.  Plaintiff is required to complete and provide documentation in order to maintain her assistance under the RDRAP program.  Plaintiff claims that, on February 26, 2016, she submitted her documentation for recertification under the RDRAP program.  Plaintiff was contacted on February 29, 2016 by an employee of OSC requesting that Plaintiff provide pay stubs and checking information.  Plaintiff claims she provided the information with the documents on February 26, 2016 and, on February 29, 2016, she resubmitted these documents to an employee of OSC.

On March 1, 2016, an employee of OSC left a note for Plaintiff stating that OSC had "completed a recertification of [plaintiff's income] effective 3-1-16 and your rate has changed.  Please come in to sign all paperwork."[9]  Plaintiff claims that, beginning on March 1, 2016, she, her parents, and her healthcare workers made "daily trips to the office and left phone messages in an attempt to obtain the paperwork for Ms. Randolph to sign"[10] - to no avail.  Plaintiff's father received a call from an employee of OSC on March 16, 2016 informing him that Plaintiff's lease had been terminated because Plaintiff had not signed the required paperwork. The following day, Plaintiff's father "retrieved from the

---

[9] Rec. Doc. 1.
[10] *Id.*
45656

Post Office a certified letter to [plaintiff] which contained a notice of 'Non-renewal of Lease for Good Cause,' which was also dated on March 1st."[11]

The Notice for Non-renewal of Lease contained the following as reasons for good cause termination: "non-compliance with the recertification process, failure to comply with monthly inspections, late payment of rent, failure to comply with signing of paperwork when needed; parking issues, and failure to report income changes."[12]  Plaintiff also states that, "in the aforementioned certified letter, or in a separate certified letter also dated March 1st, was a Termination Notice which stated the grounds for termination as failure to comply with recertification process."[13] Plaintiff's father, on her behalf, tried to arrange a meeting in accordance with the notice in the letter from March 1st, by sending a letter within 10 days of receipt with both OSC and the United States Department of Agriculture ("USDA") - the administrative agency in charge of the RDRAP program.

 Plaintiff alleges she was not granted an informal meeting with OSC and, on April 1, 2016, OSC began eviction proceedings, *Jefferson South Apartments v. Angel Randolph*, Case No. 48,721, in the Justice of the Peace Court.  Plaintiff claims that this proceeding was in violation of 7 C.F.R. 2560.160 which provided her an administrative hearing prior to eviction.  At the hearing, before the Justice of the Peace, an OSC employee testified that Plaintiff had not completed the necessary paperwork to receive benefits under the USDA program.  In the hearing, the Justice of the Peace suggested that Plaintiff sign the paperwork during the proceedings; however, the OSC employee

---

[11] *Id.*
[12] *Id.*
[13] *Id.* (internal citations omitted).
45656

refused.  The Justice of the Peace ruled in favor of Plaintiff and dismissed OSC's eviction suit.

Thereafter, an attorney for OSC contacted Plaintiff's attorney offering to provide a "reasonable hearing" relating to the non-renewal of Plaintiff's lease.[14]  On May 5, 2016, Plaintiff's attorney informed OSC's attorney as "[he] [saw] no need for the hearing you propose since all of the issues presented by Ms. McCulloch on behalf of your client were rejected by the Justice of the Peace in the eviction proceeding filed by your client."[15]  In April of 2016, OSC stopped accepting Plaintiff's rental payments and proceeded with the eviction.  On April 30, 2016, Plaintiff's father left a note with OSC indicating that Plaintiff's air conditioner unit needed replacing.  On August 1, 2016, the air conditioner repairman left a note for Plaintiff indicating that the air conditioner unit needed to be replaced.

On August 1, a "Lease Violation" was placed on Plaintiff's door.  The notice stated that, on June 20, 2016, Plaintiff had caused damage to the unit by stopping up the shower causing OSC damage in the amount of $210.  Plaintiff claims that, several months prior to June 20, 2016, Plaintiff and her next door neighbor were required to vacate their apartment in order for a plumbing company to break through the floors "to access the building's sewer and to make substantial repairs to the system."[16]  On August 5, 2016, Plaintiff's father sent a letter to OSC requesting an informal meeting about the delay in making repairs to Plaintiff's air conditioner unit.  The letter was returned refused by OSC.

Plaintiff claims that OSC's continued refusal to accept her rent and "holding the possibility of eviction over her head indefinitely…exacerbated [Plaintiff's] mental

---

[14] *Id.*
[15] Rec. Doc. 17-2.
[16] Rec. Doc. 1.
45656

condition…requir[ing] her to be hospitalized in a mental health hospital for ten days...".[17] On August 24, 2016, Plaintiff was served with a "Notice to Vacate" with the same allegations as the prior eviction proceeding before the Justice of the Peace on April 8, 2016 and the additional allegation of the damage to the shower. Plaintiff's father again attempted to schedule an informal meeting but was refused.

In the second hearing before the Justice of the Peace, the justice found in favor of OSC and ordered Plaintiff's eviction. Plaintiff filed a suspensive appeal of the Justice of the Peace's judgment on September 9, 2016, and Defendant moved to dismiss the suspensive appeal and immediately evict Plaintiff. On December 5, 2016, the 19th Judicial District Court for East Baton Rouge Parish ("19th JDC") ruled in favor of OSC upholding the Justice of the Peace's ruling granting OSC's petition to evict Plaintiff.

On December 7, 2016, Plaintiff filed a *Complaint for Injunctive Relief*[18] against OSC. Plaintiff filed a *Motion for a Temporary Restraining Order Pursuant to Federal Rule 65(a)*[19] against OSC on December 15, 2016. On December 20, 2016, the Court conducted a telephone status conference with both parties wherein both parties agreed that Plaintiff's Motion for Temporary Restraining Order was moot "per agreement of the parties."[20] On January 19, 2017, the Court conducted another telephone status conference in which "the parties were advise[d] that based on the record in this matter, there is no emergency situation and/or any <u>disputed</u> injury that could not later be solved with monetary damages."[21] On February 16, 2017, Plaintiff filed a new motion to reset

---

[17] *Id.*
[18] Rec. Doc. 1.
[19] Rec. Doc. 4.
[20] Rec. Doc. 8.
[21] Rec. Doc. 13 (emphasis added).
45656

the TRO in light of the order to vacate her apartment by February 17, 2017, which she was informed of on February 1, 2017. The Court denied the Plaintiff's renewed TRO in a *Ruling* issued on February 17, 2017.

Defendant filed a *Motion for Summary Judgment* and a *Motion to Dismiss for failure to state a claim* on September 29, 2017.[22] The Plaintiff filed *Oppositions* to both motions.[23] On October 3, 2017, Plaintiff filed a *Motion for Summary Judgment.*[24] The Court ordered the parties to provide the Court with a copy of all pleadings and memoranda from the state court eviction case, C-651305, and to brief the applicability of the *Rooker-Feldman* doctrine to the facts of the present suit in federal court. The Court will begin its analysis by analyzing the *Rooker-Feldman* doctrine.

## II.    LAW AND ANALYSIS - *Rooker-Feldman* Doctrine

"Federal courts are courts of limited jurisdiction…they possess only that power authorized by Constitution and statue, which is not to be expanded by judicial decree."[25] Therefore, "a federal court must raise the issue [of jurisdiction] because it is forbidden – as a court of limited jurisdiction – from acting beyond [its] authority, and no action of the parties can confer subject-matter jurisdiction upon a federal court."[26] Accordingly, the Court must examine whether it has jurisdiction in the present case.

Before the Court are opposing motions for summary judgment which arise from Plaintiff's complaint following a final order of eviction from the 19th Judicial District Court,

---

[22] Rec. Docs. 23 and 24.
[23] Rec. Doc. 30 and 31.
[24] Rec. Doc. 25.
[25] *Hinojosa v. U.S. Atty. Gen.,* 759 F. Supp.2d 53, 54 (D. D.C. 2011) quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).
[26] *Id.* quoting *NetworkIP, LLC v. FCC,* 548 F.3d 116, 120 (D.C. Cir. 1982) (internal quotations omitted).
45656

which Plaintiff is seeking to bar enforcement.[27]   The United States Supreme Court in *Rooker v. Fidelity Trust Company* held that only the Supreme Court could "entertain a proceeding to reverse or modify the judgment" of a state court proceeding.[28]   The Supreme Court in *District of Columbia Court of Appeals v. Feldman* stated:

> [District Courts] do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.  Review of those decisions may be had only in this Court.[29]

Most recently, the Supreme Court in *ExxonMobil Corporation v. Saudi Basic Industries Corporation* held: "The Rooker-Feldman doctrine…is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[30]   The Court's prior *Ruling* makes clear that this Court has no jurisdiction to bar the enforcement of the state court eviction.[31]   Plaintiff's only pending federal claim is her § 1983 claim against the Defendant for alleged failure to comply "by the regulations promulgated by the [USDA]."[32]

Plaintiff attempts to argue that the *Rooker-Feldman* is inapplicable to the federal claim for two reasons: 1) "the *Rooker-Feldman* doctrine only bars subject matter jurisdiction where, in this case, the Justice of the Peace court judgment became final prior

---

[27] Rec. Doc. 17.
[28] 263 U.S. 413, 416, 44 S. Ct. 149, 68 L.Ed. 362 (1923).
[29] 460 U.S. 462, 486, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).
[30] 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).
[31] Rec. Doc. 18.
[32] Rec. Doc. 1, p. 3.
45656

to the filing of the federal claim by plaintiff;"[33] and 2) "the federal statutory rights and obligations at issue were not before nor decided in any state proceedings."[34]  The Plaintiff cites no jurisprudential or statutory support for either of her arguments.

The Plaintiff's first argument that the *Rooker-Feldman* doctrine does not apply, because the present federal suit was filed before the 19th JDC entered judgment, is based on a selective quotation from the Supreme Court's decision in *ExxonMobil Corporation v. Saudi Basic Industries Corporation*; "injuries caused by state-court judgments rendered before the district court proceedings commenced []."[35]  The language the Court previously used in *District of Columbia Court of Appeals v. Feldman*, upon which the Court cited in *ExxonMobil Corporation v. Saudi Basic Industries Corporation*, states "[District Courts] do not have jurisdiction, however, over challenges to state court **decisions** in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional."[36]

Like the plaintiffs in both *Rooker* and *Feldman*, Plaintiff filed her federal suit after her state court suit had ended.[37]  Although final judgment was entered by the state court after the instant federal court proceedings were filed, the state court made its ruling granting the eviction on 12/6/16, before the Plaintiff filed suit in this federal court.[38]  Thus, a decision from a state court, was rendered before the federal suit was filed.[39]  Plaintiff's argument that the rendering of a judgment, not a ruling or decision from a state court, is

---

[33] Rec. Doc. 40, pp. 5-6.
[34] Rec. Doc. 40, p. 6.
[35] *See supra* n. 30.
[36] *See supra* n. 29 (emphasis added).
[37] *See* Rec. Doc. 1.
[38] Rec. Doc. 1, p. 10 ¶ 43.
[39] *See* Rec. Doc. 1.
45656

the triggering mechanism for the application of the *Rooker-Feldman* doctrine is contrary to the language of the Supreme Court's decisions in *Rooker* and *Feldman*. Accordingly, the Court finds Plaintiff's argument that the judgment, not the state court decision, warrants the application of the *Rooker-Feldman* doctrine unpersuasive.

Plaintiff's final argument against the application of the *Rooker-Feldman* doctrine is that "the federal statutory rights and obligations at issue were not before nor decided in any state proceedings."[40] The Seventh Circuit Court of Appeals in *Long v. Shorebank Development Corporation* examined whether a plaintiff who files a civil rights law suit in federal court, following a state court eviction action, is barred under the *Rooker-Feldman* doctrine. The *Long* court reasoned that the critical question was "if the injury alleged resulted from the state court judgment itself, the *Rooker-Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional."[41] The *Long* court further stated, "if the alleged injury is distinct from the state court judgment and not inextricably intertwined with it, the *Rooker-Feldman* doctrine does not apply []."[42]

Plaintiff's statement that "the federal rights and obligations at issue were not before nor decided in any state proceeding"[43] is contrary to the state court record. In the *Memorandum in Opposition to Suspensive Appeal*, from the state court record, the Defendant outlines its compliance with the USDA regulations, the administrator of Plaintiff's rental assistance benefit program.[44] Given that the Plaintiff's only remaining

---

[40] Rec. Doc. 40, p. 6.
[41] *Long v. Shorebank Development Corp.* 182 F.3d 548, 555 (7th Cir. 1999).
[42] *Id.*
[43] Rec. Doc. 40, p. 6.
[44] Rec. Doc. 39-1, p. 43, ¶ C1.
45656

federal law claim is based solely on Defendant's alleged failure to comply with USDA regulations, an issue that the record indicates was before the state court, the Court finds that the *Rooker-Feldman Doctrine* applies to the facts of this case, and the Court lacks jurisdiction to issue a ruling on Plaintiff's § 1983 claim because it is inextricably intertwined with the state court decision.

## III. CONCLUSION

For the above stated reasons, Plaintiff's *Motion for Summary Judgment*,[45] and Defendant's *Motion for Summary Judgment*[46] and *Motion to Dismiss for Failure to State a Claim*[47] are hereby denied as MOOT.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>May 15, 2018</u>.

_Shelly D. Dick_

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[45] Rec. Doc. 25.
[46] Rec. Doc. 23.
[47] Rec. Doc. 24.

45656